(56 South. 321.)

No. 18,462.

ALLEN v. S. H. BOLINGER & CO., Limited.

(June 15, 1911.    Rehearing Denied Oct. 16, 1911.)

(Syllabus by the Court.)

1. MASTER AND SERVANT (§ 262*)—TRIAL (§ 76*)—CONTRIBUTORY NEGLIGENCE — OBJECTION TO EVIDENCE.

A general averment of contributory negligence in the operation of certain machinery is sufficient; objection to evidence after it has gone to the jury comes too late.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 859; Dec. Dig. § 262;* Trial, Cent. Dig. §§ 183–190; Dec. Dig. § 76.*]

2. MASTER AND SERVANT (§§ 233, 236*)—INJURY TO SERVANT—DEFECTIVE APPLIANCES—CONTRIBUTORY NEGLIGENCE.

The foreman of a planing mill cannot hold his employer responsible for injuries resulting from his own negligence in operating machinery without a proper appliance, which could have been procured by the foreman with due diligence. Nor can such foreman hold his employer liable for an injury resulting from doing work without a proper appliance, where such injury could have been avoided by turning off the power operating the machine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 723–742; Dec. Dig. §§ 233, 236.*]

Appeal from Second Judicial District Court, Parish of Bossier; R. C. Drew, Judge.

Action by W. H. Allen against S. H. Bolinger & Company, Limited. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Barksdale & Barksdale, for appellant. Blanchard, Barret & Smith, Hart, Mahaffey & Thomas, and J. M. Terrell, for appellee.

LAND, J. This is a suit for damages for personal injuries. Plaintiff was the foreman of defendant's planing mill, and while in the discharge of his duties as such suffered a loss of two fingers, which were cut off by the knives of the planing machine. One of the component parts of this machine was a blower pipe, which served the purpose of carrying off the chips and shavings cut from the planks, and conveying them to the furnace of the plant. This pipe was suspended above the machine, and terminated in a hood made of sheet iron, which spread out over the cylinders and knives used to cut the planks, and rested on what is called a chip brake. The blower pipe was jointed together, and the joint immediately attached to the hood worked up in the pipe above it, so that the hood could be raised or lowered according to the thickness of the planks passing through the machine. This joint is called a "slip joint," and when in proper condition the chip brake, when raised, would raise the hood, and then the hood would follow the chip brake back down into place when the plank was taken out, or when a thinner plank was inserted, and continue to rest upon the chip brake. If the hood was in proper condition and fitted the machine, it would not come into contact with the knives when it would drop back with the chip brake. A rope and pulley were ordinarily used for the purpose of raising and lowering the hood when occasion required.

Plaintiff contends that the hood in question was too small, and the slip joint was defective; the result being that the hood, instead of following the chip brake down, would hang suspended above the cylinders, and at times in descending would miss the

chip brake and fall upon the knives. This contention seems to be sustained by the preponderance of the evidence.

On the occasion of the injury, the workman at the machine put in two planks, one of which had a feather edge, and the consequence was that the second plank overlapped the first, and caused the chip brake to rise, and the chip brake carried the hood with it, and pushed the end of the hood three or four inches into the slip joint. When the workman backed the board out, the hood stayed in the slip joint, which went back to its proper place. Thereupon the plaintiff caught the hood in both hands, and held it, to keep it from dropping into the knives. Plaintiff took his right hand off to signal the workman to close down the machinery, and when he did so the hood dropped twice upon the knives and rebounded, when plaintiff grabbed at it, and got it between his hands; but the force was so great that his right hand was pushed on the knives and badly cut up. Plaintiff's effort was to hold the hood until the workman could close down the machinery. The plaintiff and the workman both testified that the hood came down on the knives because it was too small to cover the cylinders. At the time of the accident, there was no rope on the pulley intended for raising and lowering the hood as occasion required. The fact was unknown to counsel on both sides, until it was developed on cross-examination of the plaintiff, who further testified that the rope formerly used had worn out, and he had ordered a new one through the defendant's commissary store, but the same had not been furnished up to the time of the accident. It is also shown that about a month prior to the date of the injury the plaintiff called the attention of the manager to the defective condition of blower pipes generally, and of the one over the woodworking machine in particular, and the manager promised to have all of them repaired as soon as business picked up.

As soon as he was able to work, the plaintiff was reinstated in his position as foreman, and remained in the employ of the defendant for several months.

The defenses are assumption of risks, negligence of plaintiff, and contributory negligence.

[2] The plaintiff was an experienced mill foreman, and doubtless knew more about the condition of the machinery than the manager of the plant. Plaintiff knew that the proper and safe way of handling the hood was by means of a rope and pulley. When the rope wore out, he contented himself with ordering another through the commissary store, and made no subsequent inquiry as to the filling of the order, but went on operating the hood by other means. Plaintiff knew of the defective condition of the hood and pipe, but was satisfied with a vague promise of repairs in the future. As a matter of fact, plaintiff, after his injury, worked the same defective machine without complaint or objection. The danger of handling the hood immediately above the revolving knives was obvious to the plaintiff, an expert mill man, and could have been avoided by the use of a rope and pulley, or by shutting off the power. We do not think that there is any reasonable excuse for plaintiff having undertaken to operate, for several weeks, the hood in question without using a rope and pulley to raise and lower it. Plaintiff used no diligence to procure a rope, and never notified the management that a rope was needed. It was his business to secure a rope as speedily as possible, and one could have been obtained from Shreveport within a day. The evidence shows that almost any kind of a small rope or large cord would have served the purpose, and that plow lines were available. The negligence of the plaintiff in not procuring a rope and

using it for the purpose of raising and lowering the hood was the prime cause of the accident, and debars recovery on his part. We also think that plaintiff, in the absence of the rope, was negligent in not shutting off the power before attempting to handle the hood with his bare hands.

[1] Objection is urged to the consideration of the evidence relating to the rope, on the ground that negligence in that respect is not pleaded in the answer. We think that a general averment of contributory negligence is sufficient. See Beach on Contributory Negligence, § 443. Moreover, objection was not made before the evidence went to the jury.

The defendant was depending on the plaintiff to take all proper precautions to keep the machinery in good running order, and the plaintiff cannot excuse himself for operating the same improperly without showing that he was forced to do so by the laches of the defendant.

It is therefore ordered that the verdict and judgment be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs in both courts.